IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| J.D. MAY and DALE STEPNIEWSKI, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 3:10-cv-00760 |
| ) | Judge Trauger |
| TICKETMASTER ENTERTAINMENT, LLC, ) | |
| f/d/b/a, and successor by merger to, ) | |
| TICKETMASTER and TICKETMASTER ) | |
| ENTERTAINMENT, INC.; ) | |
| TICKETMASTER, LLC; and IAC PARTNER ) | |
| MARKETING, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the court is defendant IAC Partner Marketing, Inc.'s Motion to Dismiss or, in the Alternative, to Transfer (Docket No. 8), to which the plaintiffs have filed a response and a sur-reply (Docket Nos. 12, 21), and in support of which the defendant has filed a reply (Docket No. 18). Also pending is the plaintiffs' Motion for Leave to File Amended Complaint (Docket No. 14). For the reasons discussed below, both motions will be granted.

## BACKGROUND

The plaintiffs are partial owners of Echomusic, LLC ("Echomusic").[1] Echomusic, which was initially a Tennessee limited liability company, was formed in 1997 to provide a number of

---

[1] Unless otherwise noted, the allegations are drawn from the plaintiffs' Complaint (Docket No. 1, Ex. 1).

1

different services to the Nashville music industry.[2] By 2006, the company had evolved to focus on promotion, sales, and web site management for musicians.

In 2007, Ticketmaster, via defendant IAC Partner Marketing, Inc. ("IACPM"), acquired 51% of the ownership interest in Echomusic.[3] IACPM's counsel formed a Delaware limited liability company, also called Echomusic, LLC, into which the previously existing Tennessee company was merged. On February 23, 2007, IAC and the five Echomusic owners executed an Amended and Restated Operating Agreement (the "Operating Agreement") that governed the operation of the company. The five original owners of Echomusic, or the "Class A Members," received Class A units of the LLC, and IACPM received Class B units.

In 2008, Echomusic continued to grow. At the end of the year, however, two of the original owners voluntarily left the company and sold their units to Ticketmaster. By late 2008 and early 2009, Ticketmaster had started planning significant changes in the operation of Echomusic. In January 2009, Echomusic co-founder and CEO Mark Montgomery agreed to voluntarily resign and to sell his remaining units to Ticketmaster. This would leave plaintiffs J.D. May and Dale Stepniewski as the only remaining original owners.

On April 15, 2009, two Ticketmaster executives notified Echomusic's Nashville-based

---

[2] The company was initially named Chelseamusic, LLC. The name was changed to Echomusic in 1999.

[3] The plaintiffs allege that Ticketmaster's various business entities were subsidiaries of IAC/InteractiveCorp. and that, during the Echomusic acquisition process, no distinction was made among the Ticketmaster entities. The entities and their representatives allegedly presented themselves simply as "Ticketmaster."
The Complaint does not explain the relationship among defendants IAC Partner Marketing, Inc., Ticketmaster Entertainment, LLC, and Ticketmaster, LLC. Instead, it contains allegations regarding actions by "Ticketmaster" as a whole.

2

employees that they were being terminated and that Echomusic's operations would be moved to California. The day before, on April 14, the executives held private meetings with plaintiffs May and Stepniewski to inform them of the impending office closure.

The plaintiffs allege that, on that day, they "were assured by the Ticketmaster executives, in separate and collective meetings, that Ticketmaster would purchase their ownership interests in Echomusic when the valuation of Montgomery's interest was finally determined and upon the same basis as that value." (Docket No. 1, Ex. 1 at 7.) The executives allegedly made "unequivocal and specific representations as to the timing and basis for determining the purchase price." (*Id.* at 8.) In exchange, May and Stepniewski agreed to continue working for Echomusic; May continued his sales and client relations work, and Stepniewski continued working as a technology manager and consultant.

Ultimately, Ticketmaster valued Montgomery's Class A units at approximately $127,600 per unit. It refused, however, to purchase May's or Stepniewski's units, in violation of the alleged oral agreement. The plaintiffs originally filed this action in Tennessee state court, asserting claims for (1) breach of contract, (2) promissory estoppel, and (3) violation of the Tennessee Consumer Protection Act. The defendants removed the case to this court on diversity grounds. (Docket No. 1.)

The Operating Agreement contains a forum selection clause that specifies Delaware state court as the exclusive forum for disputes among the parties to the contract:

> Each party irrevocably submits to the exclusive jurisdiction of the
> Delaware Chancery Court to the fullest extent permitted by
> Applicable Law and, to the extent not so permitted, in any court
> sitting in the State of Delaware, for the purposes of any suit, action

3

> or other proceeding arising out of this agreement or any transaction contemplated hereby. Each party hereto agrees to commence any action, suit or proceeding related hereto or thereto in the Delaware Chancery Court or, if such suit, action or other proceeding is not permitted to be brought in such court, in any court sitting in the State of Delaware.

(Docket No. 8, Ex. 1 § 12.15.)

A substantial portion of the Operating Agreement governs the members' ability to sell or transfer their ownership units. For example, Section 9.1 of the agreement allows Class A Members to transfer their units to a guardian or conservator. (*Id.* § 9.1(a).) Section 9.2 provides certain "Tag-Along Rights," which, in the event that IACPM sells any of its units to a third party, allow the Class A Members to participate in the transaction. (*Id.* § 9.2(a).) Section 9.3 contains detailed procedures regarding the parties' call and put rights. IACPM retains the call right to force Class A Members to sell their units at certain prices, beginning in 2012 or any time that a Class A Member resigns or is terminated. (*Id.* § 9.3(a).) Likewise, the Class A Members retain the put right to force IACPM to buy their units at certain prices, beginning in 2012. (*Id.* § 9.3(b).) The Operating Agreement provides detailed valuation procedures for setting the price of the units in these transactions. (*Id.* § 9.3(e)-(f).) Section 9.3 also grants IACPM a right of first refusal if a Class A Member wishes to sell his ownership units to a third party. (*Id.* § 9.3(d).)

## ANALYSIS

Defendant IACPM has filed a Motion to Dismiss or, in the Alternative, to Transfer, pursuant to Federal Rule of Civil Procedure 12 and 28 U.S.C. § 1404.[4] IACPM argues that the

---

[4] Defendants Ticketmaster Entertainment, LLC and Ticketmaster, LLC have jointly filed an Answer to the plaintiffs' Complaint. (Docket No. 7.) They have not joined IACPM's motion,

4

forum selection clause of the Operating Agreement requires the plaintiffs to maintain this suit in Delaware state court. The plaintiffs have filed a Motion for Leave to File Amended Complaint, pursuant to Rule 15, seeking to add fraud claims and to name Ticketmaster Entertainment, LLC's successor as a defendant.

**I.      Proper Procedural Vehicle for Enforcing the Forum Selection Clause**

As an initial matter, the court finds that transfer under 28 U.S.C. § 1404 is not an option here. The forum selection clause at issue specifies Delaware state court as the exclusive forum.[5] "In cases in which a forum selection clause makes a particular state court, or a foreign court, the exclusive forum, there is no federal court to which transfer may be ordered to give effect to the forum selection clause under Section 1404(a)." 17 Moore's Federal Practice - Civil § 111.04[3][a] (3d ed. 2010) (citing *Instrumentation Assocs., Inc. v. Madsen Elecs. (Canada), Ltd.*, 859 F.2d 4, 6-7 (3d Cir. 1988)); *see also Langley v. Prudential Mortg. Capital Co., LLC*, 546 F.3d 365, 371 n.2 (6th Cir. 2008) (Moore, J., concurring) ("[I]f transfer is not possible because a valid forum-selection clause mandates venue in state court or a foreign jurisdiction, § 1404(a) does not apply."). In that situation, a motion to dismiss is the proper vehicle for enforcing the

---

although they "support" the request to transfer the case to Delaware. (Docket No. 8 at 1 n.1.)

[5] The forum selection clause provides for exclusive jurisdiction in the Delaware Court of Chancery, unless this is "not permitted [by Applicable Law]," in which case jurisdiction exists "in any court sitting in the State of Delaware." (Docket No. 8, Ex. 1 § 12.15.) It further provides that suits should be filed in the Delaware Court of Chancery, unless the suit "is not permitted to be brought in such court," in which case, again, any court sitting in Delaware is sufficient. (*Id.*)
       The plaintiffs do not argue, and nothing suggests, that applicable law does not permit exclusive jurisdiction in the Delaware Court of Chancery or that this suit could not have been filed in that court. Thus, the forum selection clause mandates that Delaware state court – not Delaware federal court – is the exclusive forum.

5

forum selection clause. 17 Moore's Federal Practice - Civil § 111.04[3][a].

It is unclear exactly what subsection of Rule 12(b) applies, however. In *Security Watch, Inc. v. Sentinel Systems, Inc.*, 176 F.3d 369 (6th Cir. 1999), the Sixth Circuit affirmed the district court's decision to dismiss the plaintiff's claims based on a valid forum selection clause, but it specifically declined to address whether dismissal was proper under Rule 12(b)(1), 12(b)(3), or 12(b)(6). *Id.* at 371 n.2. Instead, the court simply considered whether the forum selection clause was enforceable; finding that it was, it affirmed the dismissal. *Id.* at 374-75. In a subsequent case, the Sixth Circuit clarified that, in cases that have been removed from state court, Rule 12(b)(3), which allows dismissal for "improper venue," is not the proper procedural vehicle. *Kerobo v. Sw. Clean Fuels, Corp.*, 285 F.3d 531, 535 (6th Cir. 2002).

Two relatively recent Sixth Circuit cases addressing forum selection clauses suggest two different approaches. In *Langley*, the contracts at issue contained forum selection clauses mandating suit in New York state or federal court, but the district court erroneously found that the contracts were invalid. The Sixth Circuit reversed and "remand[ed] for the district court to entertain a motion to enforce the forum selection clause *under Fed. R. Civ. P. 12(b)(6)* or 28 U.S.C. § 1404(a)."[6] *Langley*, 546 F.3d at 366 (emphasis added). The court noted that whether the defendant's impending motion "seeks transfer as opposed to dismissal may affect whether factors beyond the intent of the contracting parties may be taken into account by the district court." *Id.* at 369 (citing *Sec. Watch*, 176 F.3d at 371, 375-76). Judge Moore's concurrence

---

[6] In *Langley*, unlike in the instant case, the defendant could file a motion to transfer because the forum selection clause allowed suit in a federal court.

6

explained that a defendant generally has two avenues to enforce a forum selection clause: a motion to transfer or a motion to dismiss. *Id.* at 369 (Moore, J., concurring). In deciding a motion to transfer, the existence of the forum selection clause is not dispositive, because the court must consider the usual § 1404(a) factors.[7] *Id.* at 370. In contrast, when deciding a motion to dismiss, the court should simply dismiss the suit if the forum selection clause is enforceable. *Id.* at 371. Judge Moore specified that the proper procedural vehicle is "a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Id.* (quotation marks omitted).

One year after *Langley*, the Sixth Circuit decided *Wong v. PartyGaming, Ltd.*, 589 F.3d 821 (6th Cir. 2009), which involved a forum selection clause that mandated suit in a foreign court. *Id.* at 824. The district court denied the defendant's Rule 12(b)(3) motion to dismiss and instead dismissed the action *sua sponte* on *forum non conveniens* grounds. *Id.* at 825. The Sixth Circuit, undertaking a detailed *forum non conveniens* analysis, affirmed the dismissal. *Id.* at 830-34. The court did not address whether Rule 12(b)(6) was an appropriate vehicle for enforcing a forum selection clause, and it did not cite or discuss *Langley*.

In light of these cases, it appears that, when a forum selection clause mandates exclusive jurisdiction in a state court, a motion to dismiss to enforce the clause may be premised either on Rule 12(b)(6) or on the *forum non conveniens* doctrine. On a Rule 12(b)(6) motion, the court only needs to determine whether the forum selection clause is enforceable and applicable; if it is,

---

[7] These factors include "'the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of 'the interest of justice.''" *Langley*, 546 F.3d at 370 (Moore, J., concurring) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988)).

7

then the suit should be dismissed. *Langley*, 546 F.3d at 366; *Sec. Watch*, 176 F.3d at 371, 375-76; *see also Regions Bank v. Wyndham Hotel Mgmt., Inc.*, No. 3:09-1054, 2010 U.S. Dist. LEXIS 23371, at *24 (M.D. Tenn. Mar. 11, 2010) (declining to undertake a forum non conveniens analysis because the plaintiff failed to "put forth any of the typical proof regarding inconvenience and the desirability of the proposed forum versus the current forum that courts usually weigh [in deciding the enforceability of the clause]."). The court will treat the pending Motion to Dismiss as a Rule 12(b)(6) motion.

## II. Enforceability of the Forum Selection Clause

The enforceability of a forum selection clause in a diversity suit is governed by federal law. *Wong*, 589 F.3d at 828. The clause should be upheld "absent a strong showing that it should be set aside," *id.* (citing *Carnival Cruise Lines v. Shute*, 499 U.S. 585, 595 (1991)), and the plaintiff bears the burden of showing that the clause should not be applied, *id.* Specifically, the court should consider: "(1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust." *Id.* (citing *Sec. Watch*, 176 F.3d at 375).

Here, the plaintiffs do not dispute the enforceability of the forum selection clause, and nothing indicates (1) that the clause was obtained by fraud, (2) that the Delaware Chancery Court would be unable to effectively handle this suit, or (3) that forcing the plaintiff to litigate in Delaware would be so seriously inconvenient as to be unjust. Accordingly, the court finds that

8

the clause is enforceable.

## III. Applicability of the Forum Selection Clause

The plaintiffs do, however, challenge the applicability of the clause to this dispute. The plaintiffs argue that the alleged oral contract between themselves and the defendants is separate from the Operating Agreement and that, because the oral contract does not mandate a particular forum, they may pursue their claims against IACPM in this court. (Docket No. 12 at 8-11.) IACPM argues that the oral contract is merely a modification of the Operating Agreement and that, consequently, it incorporates the earlier agreement's forum selection clause. (Docket No. 9 at 5-7.)

But the argument over whether the oral contract is a new contract or a modification misses the mark. The plaintiffs ignore the most relevant language from the Operating Agreement's forum selection clause: that the Delaware Court of Chancery shall have exclusive jurisdiction over "any suit . . . arising out of this agreement *or any transaction contemplated hereby*." (Docket No. 8, Ex. 1 § 12.15 (emphasis added).) The proper resolution of the defendant's motion turns on whether the defendants' alleged agreement to buy the plaintiffs' units is a transaction that is "contemplated" by the Operating Agreement.

The Operating Agreement devotes 11 pages to the details of when and how the parties may sell their ownership interests in Echomusic. Section 9.3(d) of the agreement provides that, if a Class A Member wishes to sell his units to a third party, he must give notice to IACPM so

9

that it may exercise its right of first refusal.[8]  (*See id.* § 9.3(d).)  In their sur-reply, the plaintiffs state that "[h]ere, we have such a third party agreement."  (Docket No. 21 at 3.)  Thus, the plaintiffs concede that the Operating Agreement specifically discusses the type of sale effectuated by the alleged oral contract.  This means that the forum selection clause applies because the transaction is explicitly "contemplated" by the Operating Agreement.

In any event, the Operating Agreement contains a comprehensive scheme regarding the sale of the parties' ownership units.  (*See* Docket No. 8, Ex. 1 § 9.1(a) (providing that, except as provided in the Operating Agreement, "no Class A Member shall transfer, sell, . . . assign or in any other way encumber or dispose of . . . any Class A Units").)  The Operating Agreement provides detailed procedures by which IACPM can exercise its call rights to purchase the plaintiffs' units and by which IACPM can exercise it first-refusal rights over any proposed sale

---

[8] Specifically, Section 9.3(d) provides:

> [A]ll Transfers of Class A Units other than Permitted Transfers at any time by a Class A Member shall be made in compliance with the following terms and conditions . . . .  If a Class A Member (a "Selling Member") has received a bona fide arms' length offer to purchase all, or a portion, of the Class A Units owned by the Selling Member and desires to accept such offer, then the Selling Member shall . . . give notice in writing of such transaction to the Class B Member stating [the terms of the offer].  Such Selling Member's notice shall constitute an irrevocable offer to sell to the Class B Member all, or such portion, of the Selling Member's Class A Units at the same price and upon the same material terms as contained in the notice . . . .  If the Class B Member fails to give written notice to the Selling Member of its election to purchase . . . within twenty (20) business day[s] . . . the Selling Member shall be permitted to Transfer [its units to the third party].

(Docket No. 8, Ex. 1 § 9.3(d).)

of the plaintiffs' units to a third party. Given these provisions, it would be incongruous to find that the Operating Agreement prevents the plaintiffs from simply voluntarily selling their units to IACPM under agreed-upon terms. Therefore, regardless of any concession by the plaintiffs, the court finds that the Operating Agreement at least implicitly "contemplate[s]" that IACPM may choose to buy the plaintiffs' units. As a result, the plaintiffs' claims, which are premised on IACPM's agreement to purchase the plaintiffs' units, are covered by the forum selection clause.

The plaintiffs spend most of their brief arguing that the alleged oral contract is a separate agreement from the Operating Agreement, but this is irrelevant. The plaintiffs agreed, via the forum selection clause, to file suits regarding "any transaction contemplated [by the Operating Agreement]" in Delaware state court. (Docket No. 8, Ex. 1 § 12.15.) The clause applies to any such transaction, regardless of whether the transaction is effectuated by a separate contract, unless the later contract provides otherwise.[9] Here, the plaintiffs do not allege that their oral contract contradicted the terms of the forum selection clause.

The plaintiffs further argue that their non-contract claims should survive because "[t]he forum selection clause of the Operating Agreement is narrowly drawn." (Docket No. 12 at 12.) But the forum selection clause here broadly covers all "transaction[s] contemplated" by the Operating Agreement. The promissory estoppel and TCPA claims, like the contract claim, are both based on the defendants' alleged agreement to purchase the plaintiffs' units; like the contract claim, they are covered by the forum selection clause. *See Reder Enters. v. E. Loomis,*

---

[9] For example, the forum selection clause would undoubtedly apply to any exercise of the parties' put or call rights, even if the parties drafted a separate instrument to effectuate the transaction.

11

*Fargo & Co. Corp.*, 490 F. Supp. 2d 111, 115-16 (D. Mass. 2007) (collecting cases holding that forum selection clauses apply to related tort claims).

Because the Operating Agreement's forum selection clause is enforceable and applicable to this lawsuit, the court will dismiss the claims against defendant IACPM without prejudice.[10] The plaintiffs may refile these claims in the appropriate Delaware court.

## IV.     Motion for Leave to File Amended Complaint

The plaintiffs have filed a Motion to Amend their Complaint, seeking to add claims for negligent misrepresentation and fraudulent misrepresentation and to replace defendant Ticketmaster Entertainment, LLC with its successor by merger, Live Nation Entertainment, Inc. The Federal Rules of Civil Procedure provide that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The defendants have not opposed the plaintiffs' motion, and it does not appear that the proposed amendments will prejudice the remaining defendants in any way. Accordingly, the court will grant the plaintiffs' motion.

## **CONCLUSION**

---

[10] The plaintiffs argue, and IACPM does not dispute, that the forum selection clause does not bar suit in this court against defendants Ticketmaster Entertainment, LLC and Ticketmaster, LLC, because those entities are not parties to the Operating Agreement. (Docket No. 12 at 11-12.) Accordingly, the court will not dismiss the claims against those defendants. Of course, going forward, the remaining defendants are free to argue that IACPM is an indispensable party and that the claims against them must also be dismissed. *See* Fed. R. Civ. P. 19(b).

It is not unusual for the enforcement of a forum selection clause to result in the dismissal of fewer than all defendants. For example, in *Security Watch*, the plaintiff, Security Watch, was a dealer that sold security systems distributed by defendant Sentinel Systems and manufactured by defendant AT&T, and it alleged that the security systems were defective. 176 F.3d at 370. Although the Sixth Circuit affirmed dismissal of the claims against Sentinel Systems pursuant to a forum selection clause, the claims against AT&T, which was not a party to the relevant agreement, survived. *Id.* at 375-76.

12

Case 3:10-cv-00760   Document 22   Filed 10/13/10   Page 12 of 13 PageID #: 344

For all of the reasons discussed above, the Motion to Dismiss, or, in the Alternative, to Transfer filed by defendant IACPM will be granted. The court will dismiss the claims against defendant IACPM without prejudice to the plaintiffs' right to pursue the claims in Delaware state court. In addition, the plaintiffs' Motion for Leave to File Amended Complaint will be granted.

An appropriate order will enter.

                                                                             ALETA A. TRAUGER
                                                                             United States District Judge